FAIRCHILD INDUSTRIES *v.* MARITIME
AIR SERVICE, LTD.

[Misc. No. 4, September Term, 1974.]

*Decided March 10, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*James T. Wharton,* with whom were *McCarthy & Wharton* on the brief, for petitioner.

*John J. Kenny,* with whom was *Peter F. Axelrad* on the brief, for respondent.

182

LEVINE, J., delivered the opinion of the Court. SINGLEY, SMITH and O'DONNELL, JJ., dissent and SINGLEY, J., filed a dissenting opinion in which SMITH and O'DONNELL, JJ., concur at page 191 *infra.*

In this case, we are called upon to determine two questions arising under Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 2-316 ("Exclusion or modification of warranties"), which have been certified by the United States District Court for the District of Maryland pursuant to the Uniform Certification of Questions of Law Act, Code (1974) Courts and Judicial Proceedings Article, §§ 12-601 to 12-609.

This litigation commenced with a suit brought against Fairchild Industries, formerly Fairchild Hiller Corporation (Fairchild), designated as appellant herein pursuant to Maryland Rule 896 a(iv), by Maritime Air Service, Ltd. (Maritime), appellee. The suit, which was originally filed in the Superior Court of Baltimore City and then removed to the federal court, claimed damages for alleged breaches of express warranty and implied warranties of merchantability and fitness arising out of the sale of a helicopter by Fairchild to Maritime. The questions prompting the certification emerged when Fairchild filed a motion to dismiss under the Federal Rules of Civil Procedure.

On May 9, 1969, the parties entered into a lease agreement in which Fairchild leased the helicopter to Maritime for an initial term of one year, with options to extend the lease for an additional two years, subject to an option to purchase the aircraft during the term of the lease. Maritime exercised the option to purchase and on March 19, 1970, the parties entered into a purchase agreement which consisted of a printed form, furnished by Fairchild, on which relevant provisions were inserted by typewriter. Among those typewritten provisions was the following:

"It is specifically understood and agreed by the parties that the Aircraft is sold in an 'As is' condition. Seller makes no representation or warranties express or implied whatsoever except Warranty of Title. Buyer acknowledges that before

entering into this Agreement he has examined the Aircraft as fully as he desires."

The interposition of this "disclaimer" to Maritime's allegations that Fairchild had breached implied warranties of merchantability and fitness in the sale of the aircraft led to the certification of these questions:

"1. Does the requirement found in Article 95B, § 2-316 (2) . . . that 'to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be *conspicuous*, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous'* apply to the provisions for exclusion of warranties set forth in Article 95B, § 2-316 (3) (a) . . . ? (emphasis in original).

"2. In the event that the requirement of conspicuousness found in Article 95B, § 2-316 (2) . . . may, but need not always, apply to provisions for exclusion of warranties set forth in Article 95B, § 2-316 (3) (a), are any of the following circumstances relevant in determining the necessity for such conspicuousness?

"(1) The course of business dealings between the buyer and seller.
(2) The circumstances surrounding the transaction.
(3) Whether or not the buyer has examined or used the goods prior to the sale.
(4) The relative commercial skills of the buyer and seller."

In pertinent part, § 2-316 provides:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be

conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must. be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

"(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

"(c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade."

Since our answer to the first question shall be that the conspicuousness requirement in subsection (2) must be applied to the provisions for exclusion of warranties set forth in subsection (3)(a), it is unnecessary for us to respond to the second question.

In urging that we not apply the conspicuousness requirement to (3)(a), Fairchild contends that the two subsections were intended to be mutually exclusive. It says this intent of the drafters that the two subsections be independent of each other is expressed by these phrases which preface the subsections: "Subject to subsection (3)" at the outset of subsection (2) and "Notwithstanding subsection (2)" at the beginning of subsection (3). Thus, it maintains, these subsections, taken together, provide two alternative methods of disclaiming implied warranties: The first, under

subsection (2), by language mentioning "merchantability" where an implied warranty of merchantability is excluded, which, if in writing, must be conspicuous, and by a conspicuous writing where an implied warranty of fitness is excluded; and secondly, under (3)(a), by the use of language like "as is" or "with all faults." Thus, the conspicuousness requirement would not apply to the second method. It argues forcefully that since the language of the statute is clear in supporting this position, it should be given its natural effect.

It is evident, of course, that the words "as is" constitute an exception to the general rule, contained in subsection (2), pertaining to an exclusion or modification of warranties, but it is not clear, as Fairchild would have us hold, that those words go so far as to obviate the conspicuousness requirement in subsection (2). In the case of an implied warranty of merchantability, subsection (2) requires use of the word "merchantability," and if in writing, that it be conspicuous. An "as is" disclaimer eliminates the requirement of the word "merchantability," but it is not clear from this language that the disclaimer, if in writing, need not be conspicuous. With respect to the exclusion of an implied warranty of fitness, subsection (2) requires that it be in writing and conspicuous, but it is unclear from subsection (3)(a) which of these requirements is dispensed with by the use of the "as is" disclaimer.

The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent, *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 555, 325 A. 2d 748 (1974); *Radio Com., Inc. v. Public Serv. Comm'n,* 271 Md. 82, 93, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller,* 269 Md. 390, 393, 306 A. 2d 534 (1973); *Silberman v. Jacobs,* 259 Md. 1, 267 A. 2d 209 (1970). If there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Legislature, *Md.-Nat'l Cap. P. & P. v. Rockville, supra,* 272 Md. at 556; *Scoville Serv., Inc. v. Comptroller, supra,* 269 Md. at 393-94.

Where, as here, however, the language of a statute is of doubtful meaning, this Court, in determining the legislative

intent, will consider not only its literal meaning, but its meaning and effect considered in the light of the setting, the objectives and purposes of the enactment, and the consequences that may result from one meaning rather than another, with the real legislative intent prevailing over the literal intent, *Sanza v. Md. Board of Censors,* 245 Md. 319, 340, 226 A. 2d 317 (1967); *Walker v. Montgomery County,* 244 Md. 98, 102, 223 A. 2d 181 (1966); *Truitt v. Board of Public Works,* 243 Md. 375, 394, 221 A. 2d 370 (1966); *Md. Medical Service v. Carver,* 238 Md. 466, 478, 209 A. 2d 582 (1965); *Height v. State,* 225 Md. 251, 257, 170 A. 2d 212 (1961). Similarly, wherever possible, an interpretation should be given to statutory language which will not lead to absurd consequences, *Blocher v. Harlow,* 268 Md. 571, 584, 303 A. 2d 395 (1973); *Farber's, Inc. v. Comptroller,* 266 Md. 44, 51, 291 A. 2d 658 (1972); *Pan Am. Sulphur v. State Dep't,* 251 Md. 620, 627, 248 A. 2d 354 (1968).

The purpose of § 2-316 is set forth in Official Comment 1 to that section:

> "This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' *It seeks to protect a buyer from unexpected and unbargained language* of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by *conspicuous language or other circumstances which protect the buyer from surprise.* " (emphasis added).

It is clear that subsection (3) aims at maintaining this protection for the buyer, as Official Comment 6 states:

> "The exceptions to the general rule set forth in paragraphs (a), (b) and (c) of subsection (3) are common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded."

In light of the legislative purpose of § 2-316 to insure that exclusions of warranties are brought to the attention of the buyer, we are persuaded by the argument that, while expressions like "as is" put the buyer on notice of the disclaimer, they do so only when brought to the buyer's attention. This means that in the case of a written disclaimer, the writing must be conspicuous. Acceptance of the argument advanced by Fairchild would mean that a written exclusion of the implied warranty of merchantability, expressly mentioning that word, would be ineffective unless conspicuous; and that the written language, " 'There are no warranties which extend beyond the description on the face hereof,' " would be equally ineffective to exclude a warranty of fitness unless conspicuous. Yet, the words "as is," even if buried in the fine print of a lengthy document, would exclude all implied warranties. We fail to see how this anomalous result would further the avowed purpose of § 2-316 "to protect a buyer from unexpected and unbargained language of disclaimer." The words "as is" are sufficient to put the buyer on notice that there are no implied warranties, but only when they are brought to the attention of the buyer.

Nor is there any merit in Fairchild's argument that had the drafters intended the expression "as is" to be conspicuous, they would have employed the capital case "AS IS" or "WITH ALL FAULTS" rather than the lower case. The same lower case is also used in the exclusions mentioned in subsection (2); yet, even Fairchild would concede that they must be conspicuous.

Neither do we find support for Fairchild's position in comment 7 to § 2-316:

> "Paragraph (a) of subsection (3) deals with general terms such as 'as is,' 'as they stand,' 'with all faults,' and the like. Such terms in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved. The terms covered by paragraph (a) are in fact merely a particularization of paragraph

(c) which provides for exclusion or modification of implied warranties by usage of trade."

Like comment 6, quoted earlier, this statement must be viewed in light of the manifest intention to inform the buyer of the disclamatory language in the first instance. Otherwise, the fine print in the middle of any lengthy contract might well become a haven for a sophisticated seller and a trap for the unwary buyer. As so aptly put by the court in *Osborne v. Genevie*, 289 So. 2d 21, 22 (Fla. App. 1974), "While the man on the street might more nearly comprehend the legal effect of 'as is' than a repudiation of warranties, it makes no difference if he doesn't see the provision in the first place."

The principal case dealing with this question, *Gindy Mfg. Corp. v. Cardinale Trucking Corp.*, 111 N. J. Super. 383, 268 A. 2d 345 (1970), imposed a conspicuousness requirement on written "as is" disclaimers:

> "The metamorphosis of § 2-316 and the reason given in the legislative history mentioned above suggest that the use of expressions like 'as is' was intended merely to give effect to common terms in addition to those specified in subsection (2) as a means for disclaiming certain warranties. There is no evidence of a legislative purpose to require conspicuous language in one case and not when expressions like 'as is' are used.

> "It appears desirable to read into § 2-316 (3) the requirement of conspicuousness when the attempted disclaimer is in writing. This would avoid surprise to a buyer and fulfill a fundamental purpose of the Code. . . ." *Id.* at 352.

The rationale for this decision was further explained:

> "It does not make sense to require conspicuous language when a warranty is disclaimed by use of the words 'merchantability' or 'fitness' and not when a term like 'as is' is used to accomplish the same result. It serves no intelligible design to

protect buyers by conspicuous language when the term 'merchantability' is used, but to allow an effective disclaimer when the term 'as is' is buried in fine print. Nor does it make sense to require conspicuous language to disclaim the implied warranties of merchantability and fitness and not impose a similar requirement to disclaim other implied warranties that arise by course of dealing or usage of trade. The expectations of the buyer need as much protection in one case as in another. . . . It seems reasonable to say that to avoid these implied warranties the requirements of subsection (2) must be met, except that expressions like 'as is' will be given effect in addition to the expressions specified in subsection (2). . . ." *Id.* at 352-53.

The same result was reached in *Woodruff v. Clark County Farm Bureau Coop. Ass'n,* 286 N.E.2d 188 (Ind. App. 1972), where the court stated:

"The problem is to determine whether the conspicuous requirement of Number 2 is carried over to and becomes a part of Number 3 so that implied warranties are not negated unless expressions like 'as is' are conspicuous. The close interrelation of these two sections is manifested by their like intent to call the buyer's attention to the exclusion of implied warranties and it would do violence to their stated purpose to do otherwise than imply that excluding expressions like 'as is' must be conspicuous. This interpretation harmonizes with the basic purpose of the UCC which is designed to protect purchasers from surprise." *Id.* at 196-97.

*Accord, Osborne v. Genevie, supra;* 1 Hawkland, *A Transactional Guide to the U.C.C.,* 76-78 (A.L.I. 1964); *Cf. Regan Purchase & Sales Corp. v. Primavera,* 328 N.Y.S.2d 490 (N.Y. Civil Ct. 1972).

The only case suggesting the opposite result, *Smith v. Sharpensteen,* 521 P. 2d 394 (Okl. 1974), is not in point and,

in our view, does not withstand analysis. That case involved a disclaimer of warranties which did not use any language like "as is" or "with all faults"; nor was the word "merchantability" mentioned. The buyer, however, did have actual knowledge of the disclaimer. Faced with the dilemma of the disclaimer not meeting the requirements of subsections (2) or (3), but yet desirous of upholding the disclaimer, the court merely stated that, "[s]ince under the uncontradicted evidence the requirements of subsection (3) were satisfied, the requirement of subsection (2) that the exclusion be 'conspicuous' is not applicable." 521 P. 2d at 396. Given the absence of any reasoning or citation of authority to support this bald statement, we decline to follow that case.

In conclusion, we find the reasoning of the *Gindy* case wholly persuasive. To hold otherwise would totally negate the effect of subsection (2) by allowing the exclusion of implied warranties through inconspicuous use of the simple words "as is" obscured in the middle of a contract. Such an absurd result would be contrary to the spirit of the Uniform Commercial Code, and to the policy disfavoring exclusion of warranties and construing such disclaimers against the seller, *Overland Bond and Investment Corp. v. Howard,* 9 Ill. App. 3d 348, 292 N.E.2d 168, 174 (1972); *Woodruff v. Clark County Farm Bureau Coop. Ass'n, supra,* 286 N.E.2d at 196; *Henningsen v. Bloomfield Motors, Inc.,* 32 N. J. 358, 161 A. 2d 69, 77-78, 75 A.L.R.2d 1 (1960); *Berg v. Stromme,* 79 Wash. 2d 184, 484 P. 2d 380, 382 (1971). Accordingly, we must agree with Professor Hawkland [1] that:

> " . . . While the subsection [2-316 (3)(a)] does not explicitly so provide, it would seem that these phrases and expressions would have to be stated conspicuously to become effective disclaimers. Such a requirement is consistent with the general rule that the disclaimer must 'call' the risk to 'the buyer's attention' and 'make . . . plain [to him] that there is no implied warranty.' "

1. 1 Hawkland, *A Transactional Guide to the U.C.C.,* 77 (A.L.I. 1964).

In our view, although the expressions "as is" and "with all faults" fulfill the language requirements of subsection (2), when in writing, they must be conspicuous within the meaning of subsection (2). Hence, in response to the certified question, we hold that the requirement found in Art. 95B, § 2-316 (2), "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous," applies to the provisions for exclusion of warranties set forth in Art. 95B, § 2-316 (3)(a). As we said earlier, this decision makes it unnecessary for us to answer the second certified question.

> *Question of law answered as herein set forth; costs to abide the result.*

*Singley, J., dissenting:*

I respectfully dissent. In matters involving statutory construction, I follow Lord Mildew's dictum in *Bluff v. Father Gray*, "If Parliament does not mean what it says, it must say so." [1] Few legislative enactments have been the subject of the extensive consideration and discussion accorded the Uniform Commercial Code, *see Bona v. Graefe*, 264 Md. 69, 285 A. 2d 607 (1972). I simply remain unpersuaded that the prepositional phrase "Notwithstanding subsection (2)" with which subsection 2-316 (3) of the Uniform Commercial Code begins means anything other than all implied warranties are excluded when goods are sold "as is" or "with all faults," in spite of [2] the conspicuousness required for the exclusion or modification of an implied warranty of merchantability or of fitness by § 2-316 (2).

---

1. A. P. Herbert, Uncommon Law, 192 (1936).
2. When used as a preposition, "notwithstanding" has the meaning "in spite of," Webster's New International Dictionary 1669 (2d ed. 1944).

Even Dean Hawkland, relied on in *Gindy Mfg. Corp. v. Cardinale Trucking Corp.*, 111 N. J. Super. 383, 268 A. 2d 345 (1970) and by the majority, concedes that "[w]hile the subsection [2-316 (3) (a)] does not explicitly so provide, it would seem that these phrases and expressions ["as is," "with all faults"] would have to be stated conspicuously to become effective disclaimers." [3] It seems to me that the short answer to this argument is that if this is what the draftsmen meant, they could easily have said so.

Since I find nothing ambiguous or obscure in the language used, I would answer the first certified question in the negative.

Judges Smith and O'Donnell authorize me to say that they join in the views herein expressed.

<hr />

3. Hawkland, Limitation of Warranty Under the Uniform Commercial Code, 11 Howard L. J. 28, 32 (1965).